Your Honor, Doug Phelps on behalf of Michael Lojas, and if it pleases the court Lojas, I take it? Lojas, yes, Your Honor Okay Your Honor, this case arose out of a search warrant that was conducted A search actually that was conducted by the DEA and some local law enforcement agencies for drugs But in the course of that, a Fish and Wildlife agent responded to the scene without a search warrant Ostensibly on the call of a local sheriff who was involved in the search for drugs At the scene, they seized antlers from various types of game and cougar skull and some other items My client, Mr. Lojas, was a taxidermist, and he had those items there for both himself and his family And some other people, he also did that as a hobby And it's not disputed that there was no warrant for any of these items that the Fish and Wildlife agent seized I don't think there's any dispute about that But this case was dismissed at summary judgment in the district court And it's our contention that the court erred in dismissing the action against the Fish and Wildlife agent, Rae Smith When there was injunctive relief available as to her personally and as an agent officially And that there was potential for monetary damages that could have been brought against her for the actions You address, it seems to me, at least one stumbling block in your case And that's these two Washington statutes that basically give the Fish and Wildlife wardens of Washington State A pretty broad swath to do things without a warrant So I'd be interested to know how you think those statutes figure into the analysis Well, I think certainly that a state statute could not supersede the Constitution In terms of the Fourth Amendment seizure And I think that that statute's distinguished too Because it has an exception in it for a search conducted in the home or in the person's house And that's what occurred in this case These items were in the home and in the outbuilding there on the property in Stevens County They have a right to be there, and once you have the other agents there under a warrant It kind of breaks down into presence and then seizure What is your view on whether the Fish and Game officer had a right to just be on the property at the invitation of the other officers? I don't believe that she did have a right to be there at the invitation of the other officers Because she was there looking and searching for evidence of Fish and Game violations And the warrant specifically stated that it was only for drugs and the proceeds of drug activity The deputies were there lawfully pursuant to a warrant? The deputies were there as part of the DA activity Were there lawfully and properly, correct? I believe that they were there lawfully and properly They had a right to be where they were, right? The deputies working with the DA did have a right to be there They see some material, they're not expert in this area So they called the Fish and Wildlife people, right? Well, I think there is a question about whether they were there lawfully And I guess that's kind of a separate issue There was a search warrant that was signed by a district court judge Which would be like a magistrate level in Spokane County She was not a superior court judge There was a warrant signed by a magistrate The 1983 action, does your complaint attack the warrant or its validity in any way? We did argue at the summary judgment that the warrants weren't valid Let's assume that they were there lawfully It's hard to believe that you're arguing otherwise But let's assume that the deputies were there lawfully They see material, they're not expert in what may be Fish and Wildlife violations or not, were they? Well, I... Can I have a simple answer to that? They're not expert in the area, are they? I think that the deputies probably in Stephens County Are very well versed on Fish and Wildlife Because they work in a rural area, many of them are hunters Whether they were or not, they sought the advice of somebody who was, correct? They were, but they were not on the premises to seize anything related to that Make that abundantly clear Now, they bring her in Does she just seize the items? Just boom, grab them? Well, what she did was... Yes, essentially she did She loaded up... That's a no, isn't it? The answer that she immediately seized items... She called somebody, didn't she? No, no, I think before she went to the location She called the prosecutor, Mr. Shroyer To ask if she could go there on the warrant And I think there's a little bit of uncertainty In the facts that came out in the deposition Whether Mr. Shroyer merely told her she could go onto the property Or told her she could go there onto the property and seize items At a minimum, he said she could go there I think that that's... So at a minimum, she went there believing from the prosecutor That she had a lawful right to be there on the premises I believe that's true That Mr. Shroyer did at least tell her that she could go to the property What's the clearly established right that she violated? Well, the clearly established right that she violated Was that she seized property, the antlers, the cougar heads... Now describing what she did What clearly established right of your client did she violate? She seized items that were not under the warrant And were not readily identifiable as illegal Illegal for him to maintain or hold She testified in her deposition That she didn't see, readily observe And I think the district court found That the plain view analysis did not apply That these were not items that could be seen on plain view As illegal items And in fact, she testified at the deposition That the tags that she was looking for Saying that these antlers didn't have The tags only have to be with the meat If you kill a piece of game You're to maintain the tags with the meat And these were antlers, horns, skulls Things where you're not required to have a tag And that's why she seized these items Was because he couldn't produce the tags For the antlers and horns My client's very versed in gaming and that He pointed out to her I don't have to have a tag for skulls and antlers I have to have tags for meat And she testified in her deposition She wasn't aware that there was any meat there And she says in her deposition That the tags were to accompany The largest portion of the meat And I think the government's tried to argue That there might have been some brain matter Something attached to some of these antlers But the tags that she seized these items for Have to be kept with the meat And so there wasn't a plain view violation That's what the district court found I think the judge was right in finding that Because it's not against the law To have antlers and horns And it's not uncommon for people In Stevens County and Coeur d'Alene Other counties to go out and pick those up And they use them for light fixtures And those kinds of things And that's not against the law to possess So what she seized was something that On the face of it was legal And she held it for forfeiture or an investigation Claiming that she thought That there might be something illegal going on I think the evidence is that later on She discovered there wasn't Anything illegal going on As my client maintained So she went into his house Seized things that were legal It was not, on the face of it Not anything illegal going on And that's our contention Of course what the district court found Was that taking all that to be true That she in good faith Based on the prosecutor, the statutes The validity of the warrant Had no reason to think She couldn't do what she did I think that was That's really what the district court Had on in the end I would agree with you You're down to about a minute Did you want to save some time for rebuttal? Yes I would, just save that Thank you We'll hear from the state at this time Counsel Thank you your honor Good morning your honors I'm Gerald Cartwright I'm Assistant Attorney General I'm here for Officer Ray Smith And the Department of Fish and Wildlife Of the State of Washington What Officer Ray Smith walked into On the morning of May 11, 2005 Was a pretty massive drug search By the DEA and a local drug task force And she was called there Because they'd run across Dozens and dozens of animal carcasses Hides, antlers Lots of things that they had questions about And didn't know Whether these things were being held Legally under state law or not So they called Officer Ray Smith She was off duty at the time Came on duty and responded to the property She walked into a barn On the logist property And on the floor of the barn She sees a pile of salt Which as an experienced officer She knows is used in a taxidermy operation Nearby the pile of salt She sees a pile of deer heads With antlers attached to them There are four deer heads They have antlers attached to them Three of them have the capes The hides of the deer Antlers still attached to the heads And three of them have brain matter Dripping still from the skulls Indicating they were recently Apparently recently killed Now at this point The officer thinks she's walked into A taxidermy operation She doesn't know who these Skulls belong to The record indicates that as she's gone Through the home and through the barn And the other outbuildings She's seen a number of animals That have tags on them With other person's names on them Now As Mr. Phelps indicated His client Mr. Logist Was a taxidermist And was is the operative word there Because he was not a taxidermist On May 11, 2005 And the record indicates this clearly Mr. Logist hadn't practiced taxidermy As a licensed person since 1998 And Officer Ray Smith Knew this at the time She was observing all of these articles So he wasn't a taxidermist Didn't have a current license She was She indicated She so testified in her deposition That she was aware of this I think she had access Computer access To licensing While she was on the premises Either on the premises or before And or She was familiar with Mr. Logist From some other actions Because she is the Fish and wildlife agent In that region and is familiar With the region and persons in the area Items that she Seized that day Were not contraband Were they? May or may not have been That's Unlike maybe cocaine Heroin Something like that That was not something that Was readily apparent As contraband was it? Not readily apparent as contraband Correct Was there any danger that These items would be lost Or destroyed or Taken away from the scene? Yes that's the problem Your Honor If These kinds of items are left With an officer To try and come back later And seize them after doing further Investigation As soon as the officer drives out the driveway The items are going to disappear You've left a little bit ahead of me While they were there when she responded How many agents were there? I can't tell you for sure But there were more than five or six There were a lot of drug agents there Was there anything to prevent her From asking them to assist In freezing the scene And seeking a further warrant To seize these items? Don't know that there was Okay She did however Walk into that scene And find these animals In that state Find that pile of salt See all of these other animals Tagged And ask Mr. Loges If he could produce The transportation tags For the four deer heads That he saw on the floor And that's where I think we have a little problem With the record this morning Because Mr. Phelps tells us That he pointed out that he didn't need To have those tags with the antlers At that point What the record truly indicates Is that she asked for those tags And he said he didn't know Where they were And at that point She says would they be with the meat And at that point He did not answer her How long were these items kept By the state? The deer heads There were several items seized The deer heads were kept I believe four or five months Before they were returned After the charges were dismissed It was determined That it was not clear That they were unlawful Or what determination Was reached by the state After the deer heads were seized The officer went back And checked the harvest records Because every hunter has to turn in A harvest record Mr. Loges' explanation on the scene Was that he and his two daughters Had shot At least three of the deer In that pile What the officer noted was That in looking at the harvest records One of the daughters Indeed shot a buck deer One of the daughters Shot a doe There was no doe in that pile Of four heads The other deer that was shot Was I believe a three by three Buck And there was no three by three Three point buck antlers In the pile So after it was seized The further investigation still left that Sort of up in the air What is it that the officer Suspects at that time? Is she concerned that there's an illegal take of wild animals Or is she concerned that this is An unlicensed taxidermy operation? She's got both of those concerns, your honor She can seize Items under the statutes If they're illegally taken Or possessed Is she also charged with enforcing the taxidermy rules? Right, the taxidermy Licensing law is also under Title 77 Even if you had The tags on the deer If he didn't have a taxidermy license Can he do it for himself? If he's not doing it for somebody else's account? Well, that becomes the issue Is he doing it as a hobby Or is he doing it for someone else? And that's why the items were seized So that could be followed up on You know, that Kind of begs the question Because even under the Washington law You had to have probable cause That there was a violation So what was the probable cause That there was a violation At that stage? All of the circumstances at the time Would lead a reasonable officer In that situation to believe that These items were either illegally possessed Or Illegally taken And those circumstances Included the deer heads That looked to be fresh kills Without tags Mr. Loges being unable to Properly explain where they came from Or produce the tags or the meat And the pile of salt Together with all of those Other items that the Officer had seen and seized as she went Through the property that day Okay Thank you very much for your argument We always appreciate it when you stop A little bit short Thanks for coming in today You have a little bit of time left for rebuttal counsel The agent testified That it's the policy Of the department That they seize the items And then later determine if there's been Any wrongdoing And I think that's why injunctive relief Is critical here because the department Has created By testimony at least A policy that they seize Items if they can't determine if there's any Illegal activity or not From the citizen And then later they determine If there's been a violation And they return them That's what happened in this case They seized those items And then gave them a forfeiture notice And then later they sent a letter back to me As his attorney saying We're returning these items They don't apply as a forfeiture And they return them to us The client at the time was not a licensed taxidermist Correct? No but he can do taxidermy For himself and for gain If he or his family Would kill Could he charge for it? Well I think that would be the problem If he were charging for performing taxidermy That would get him in trouble I would say If you hunted with him And he did you a favor And he didn't charge you a fee That he could Mount the game for you As a favor And he could also do that For friends and family Red lights on Thank you Thank you
judges: Hawkins, McKeown, Bybee